[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15394
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00340-TCB-CCH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HASSAN ALWALI,
a.k.a. Hassan Alwali,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 22, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Hassan Alwali, formerly known as Willi Frank Cleveland, appeals his

convictions for making false representations regarding information that was required to be maintained in the records of a federal firearms licensee, in violation of 18 U.S.C. §§ 924(a)(1)(A), 2, and making false representations to a federal firearms licensee that were likely to deceive it as to facts material to a sale of firearms, in violation of 18 U.S.C. §§ 922(a)(6), 2. He argues, first, that the government failed to present sufficient evidence that he knowingly aided and abetted his codefendant and sister, Barbara Cleveland, in falsely representing that she was the actual buyer of the firearms. He further argues that the evidence of his prior felony conviction was prejudicial and lacked probative value. For the reasons set forth below, we affirm.

I.

Barbara Cleveland moved to Gordon, Georgia, from Elizabeth, New Jersey, between August 8 and 11, 2008. One of her brothers, Kendall Cleveland, drove her moving truck from New Jersey. On August 18, 2008, she and Alwali went to Elite Pawn & Jewelry, a federally licensed firearms dealer in Conyers, Georgia. Conyers is near Alwali's home in Lithonia and about one and a half to two hours from Gordon. Alwali previously had been convicted of a felony offense and, thus, was prohibited from purchasing guns.

At Elite Pawn & Jewelry, Cleveland and Alwali browsed and physically

2

handled the guns together. Alwali expressed particular interest in a Taurus 92 handgun with a laser sight. When the store clerk, Tim Keller, remarked that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") would be notified immediately of a transaction involving multiple guns, Cleveland told him that she and Alwali were starting a gun collection. Cleveland purchased five handguns that day, including the Taurus 92, another Taurus 9-millimeter, two Hi-Point 9-millimeters, and a .45 caliber pistol. Keller testified at trial that it is unusual to sell five firearms in a single transaction. A receipt made out to Cleveland indicated that she paid $1,357.75 in cash. Cleveland completed a multiple-sale form and an ATF-4473 form. On the Form 4473, she answered "yes" to the question, "Are you the actual buyer of the firearm listed on this form?" The form included a warning that a dealer cannot transfer a firearm to an individual if the individual is acquiring it on someone else's behalf. Elite Pawn & Jewelry did not permit customers to arrange private sales inside the store, and Keller did not tell Cleveland otherwise.

While Cleveland and Alwali were browsing the guns, an individual named Myron Banks was completing paperwork to trade in two guns from his collection. Alwali approached him and asked whether he had any other guns that he would be interested in selling. Banks told him about a .357 Magnum that he wanted to sell because it was "too powerful" and he did not enjoy shooting it. Later that

3

evening, Alwali called Banks to inquire about purchasing the gun. Banks met him and Cleveland in the parking lot of a gas station. Cleveland remained in their car while Alwali entered Banks's vehicle. Alwali handled the .357 Magnum and expressed interest in purchasing it, but told Banks that Cleveland would be making the actual purchase. They exited Banks's vehicle and approached the other car, where Banks showed the gun to Cleveland. She looked at it, but she did not remove it from the case before handing it to Alwali. Although Alwali appeared to Banks to be in charge of the transaction, Cleveland completed the bill of sale. At trial, Banks indicated that a .357 Magnum is "a lot of gun for a woman" and that his wife did not enjoy shooting it, either.

One of the Hi-Point 9-millimeter pistols was recovered in New Jersey on September 15, 2008. The Taurus 92 was recovered in New Jersey on October 13, 2008. The .45 caliber pistol was recovered in New Jersey on October 22, 2008.

Cleveland and Alwali's cousin, Melissa Mason, worked for the Gordon Police Department. In late September, Cleveland told her that one of the guns had been stolen and asked how to report the theft. Mason told her to go to the Wilkinson County Sheriff's Office. Cleveland reported to the Sheriff's Office on September 24, 2008, that six firearms had been stolen from her. Mason testified at trial that Gordon is not dangerous and that she did not feel that she needed a

4

firearm to protect herself. An investigator for the Sheriff's Office said that he had not investigated a burglary in that part of the county in the past ten years.

As a result of the recovery of the three firearms in New Jersey, ATF Agent Patrick Leahey interviewed Cleveland at her home on November 20, 2008. She told him that she wanted to buy six firearms, one for every room in her home. In explaining why she had purchased the guns at a shop 1.5 hours from her home, she initially said that she was looking for employment in Lithonia and just happened to see the store. Later, she said that she happened to be in Lithonia while going to visit another brother in Stone Mountain. She also gave differing explanations for how she came to pay in cash, first indicating that she happened to have with her $3,600 that she had brought from New Jersey, then stating that she withdrew $2,000 from her bank account in order to make the purchase.

Cleveland originally told Leahey that Kendall, the brother who had driven her moving truck, returned home two days after their arrival in Georgia. She said later that he was still in Gordon when she brought the firearms home. She also changed her explanation for the purchase, indicating that she only planned to buy three firearms, but when she saw six that she liked, the salesperson suggested that she buy all six and return three of them. She told Leahey that Banks had approached her at the sales counter and offered to sell her the .357 Magnum, and

5

that Keller told her that it would be fine to arrange a private sale inside the store. She also variously indicated that she had stored the guns in the trunk of her car and in the shed on her property.

Cleveland initially told Leahey that she returned home on August 18th, put the firearms in her shed, then drove to Stone Mountain. When she returned home later that day, the lock on the shed had been broken and the guns had been stolen. When Leahey noted that she had not filed the police report until after one of the guns had been recovered, she said that it took her a day or two to obtain the necessary paperwork and go to the Sheriff's Office. He then noted that several weeks had passed before she filed the report, upon which she claimed that she had stayed in Stone Mountain until September 3rd and discovered the theft when she returned home. Leahey testified at trial that a gun with a laser sight is not a basic home-protection gun.

Another ATF agent interviewed Alwali at his home. Alwali indicated that he had been at Elite Pawn & Jewelry, that he had seen Banks there, and that "he just knew something wasn't right" about the sale.

In 2009, a federal grand jury indicted Alwali and Cleveland on two counts: (1) making false representations regarding information that was required to be maintained in the records of a federal firearms licensee, in violation of 18 U.S.C.

6

§§ 924(a)(1)(A), 2; and (2) making false representations to the licensee that were likely to deceive it as to facts material to a sale, in violation of 18 U.S.C. §§ 922(a)(6), 2. Specifically, the indictment alleged that Cleveland and Alwali falsely represented that Cleveland was the actual purchaser of the five pistols obtained from Elite Pawn & Jewelry. The jury found them guilty of both counts.

## II.

We review a challenge to the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government. *United States v. Toler*, 144 F.3d 1423, 1428 (11th Cir. 1998). All reasonable inferences and credibility determinations are drawn in favor of the government. *United States v. Ellisor*, 522 F.3d 1255, 1271 (11th Cir. 2008). "Because we recognize that the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial, our sufficiency review requires only that a guilty verdict be reasonable, not inevitable, based on the evidence presented at trial." *Id.* (quotation marks omitted). We will affirm a guilty verdict unless no reasonable trier of fact could have found guilt beyond a reasonable doubt. *Toler*, 144 F.3d at 1428.

In order to convict a defendant under § 924(a)(1)(A), the government must prove that the defendant (1) knowingly (2) made a false statement or

representation (3) with respect to information that is required to be kept in the records of (4) a federally licensed firearms dealer. 18 U.S.C. § 924(a)(1)(A). "For a conviction under § 922(a)(6), the government must prove that: (1) the defendant knowingly made; (2) a false or fictitious written or oral statement in connection with the purchase of firearms; (3) intended to deceive or likely to deceive a licensed firearms dealer; (4) and the false statement was a fact material to the lawfulness of the sale or disposition of the firearm." *United States v. Frazier*, 605 F.3d 1271, 1278-79 (11th Cir. 2010) (quotation and alteration marks omitted). "The standard test for determining guilt by aiding and abetting is to determine whether a substantive offense was committed by someone, whether there was an act by the defendant which contributed to and furthered the offense, and whether the defendant intended to aid its commission." *United States v. Walser*, 3 F.3d 380, 388 (11th Cir. 1993) (quotation marks omitted).

Here, the government presented evidence that Cleveland traveled from Gordon to the Lithonia/Conyers area, where Alwali lived, and that she and Alwali went to Elite Pawn & Jewelry to shop for firearms. Cleveland and Alwali browsed the guns together, and both Cleveland and Alwali would handle the guns that Keller showed to them. Alwali showed interest in the Taurus 92 with the laser sight. Keller found it unusual to sell five firearms in a single transaction.

Cleveland indicated on the Form 4473 that she was the actual buyer of the firearms. If she had not done so, Keller would not have sold the firearms to her. Alwali could not purchase the firearms because he had a prior felony conviction. Alwali approached Banks about the possibility of purchasing one of his guns, he arranged the transaction with Banks, and he inspected the .357 Magnum and agreed to the purchase before Cleveland paid Banks and completed the bill of sale. Banks testified that the .357 Magnum was "too powerful" for recreational shooting and was "a lot of gun for a woman," and Agent Leahey testified that a gun with a laser sight is not a basic home-protection gun. Alwali later told law enforcement that he had suspected that something about Cleveland's purchase of the firearms "wasn't right."

The government presented further evidence that Cleveland gave conflicting stories regarding her reasons for purchasing the guns, the cash she used for the purchase, her reason for being in Lithonia, whether Kendall returned to New Jersey before or after the purchase, where she stored the guns, and when she discovered and reported the alleged theft of the guns. Three of the firearms were recovered in New Jersey between September 15 and October 22, 2008. Although Cleveland claimed to have discovered the alleged theft of the guns at least by September 3rd, she did not file a police report until September 24th.

From these facts, the jury reasonably could infer that Cleveland did not purchase the guns for home protection but, rather, knowingly served as a straw purchaser for one of her brothers. Because the purchaser's identity as the "actual buyer" is material to the lawfulness of a firearm sale and must be recorded on the Form 4473, the jury reasonably concluded that Cleveland's misrepresentation of herself as the actual buyer constituted a violation of §§ 922(a)(6) and 924(a)(1)(A). *See* § 924(a)(1)(A); *Frazier*, 605 F.3d at 1278-79; *Walser*, 3 F.3d at 388. Furthermore, the jury reasonably viewed Alwali's active involvement in the transaction as an action that furthered Cleveland's offense. *See Walser*, 3 F.3d at 388. Finally, in light of Alwali's apparent knowledge of guns and his statement that he "knew something wasn't right" about the transaction, the jury reasonably could infer that Alwali realized that the guns were not appropriate for Cleveland's personal use, understood that she was not the actual buyer, and intended to assist her in falsely representing herself as such in order to facilitate the purchase. *See id.* Thus, the evidence supported the jury's finding that Alwali aided and abetted Cleveland in making the false representation. *See Ellisor*, 522 F.3d at 1271.

III.

Prior to trial, Alwali moved *in limine* to prohibit the government from cross-examining him about his prior convictions or his status as a convicted felon. He

10

argued that any use of his 1991 convictions was time-barred, and that his 1998 convictions for unlawful possession of firearms and unlawful drug distribution bore no similarities to the instant allegations.  Thus, he contended, the commission of the past crimes would have no probative value but would create a danger that the jury would consider his "criminal nature" as evidence that he acted illegally.

At the same time, the government filed a motion *in limine* to permit evidence that Alwali was prohibited from possessing a firearm under § 922(g).  It argued that Alwali's prohibited-person status was integral to its theory that Cleveland acted as a straw purchaser for him.  The government offered to enter into a stipulation regarding Alwali's status in order to avoid undue prejudice.

During a pretrial hearing, Alwali argued that a stipulation would be reasonable only if he were to testify at trial, as the prior convictions did not go to an element of the offense, and that the fact of his prior convictions would be highly prejudicial.  The government responded that Alwali's prohibited status might be an essential element of one of the charges, and, regardless, it was relevant to the defendants' motive.  The court stated, "It's admissible for that purpose," and ordered the parties to "work out an agreement on the language of the stipulation."  Alwali subsequently moved for reconsideration.  The court clarified that the motive issue had been the basis of its original ruling, and it

11

denied the motion to reconsider.

During trial, Keller testified that someone who previously was convicted of a felony cannot lawfully buy a gun. The prosecutor then read the following stipulation: "Prior to August 18th, 2008, the Defendant Hassan Alwali was convicted in a court of competent jurisdiction of a federal [sic] offense. That is a crime punishable by a term of imprisonment exceeding one year." No further mention was made during trial of Alwali's criminal background.

Evidentiary rulings are reviewed for a clear abuse of discretion. *United States v. Jones*, 601 F.3d 1247, 1261 (11th Cir. 2010). "A district court's evidentiary rulings will only be reversed if the resulting error affected the defendant's substantial rights." *Id.*

District courts have broad discretion to admit probative evidence, whereas their discretion to exclude evidence under Fed.R.Evid. 403 is limited. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990). "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403. Pursuant to Rule 404(b), evidence of other crimes, wrongs, or acts is not admissible for the purpose of proving a person's

12

character and, thus, proving that he acted in conformity with such character. Prior-bad-acts evidence may, however, be admissible for proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 404(b). "We employ a three-part test to determine whether a district court abused its discretion by admitting evidence of prior bad acts." *United States v. Phaknikone*, 605 F.3d 1099, 1107 (11th Cir.), *cert. denied*, 131 S.Ct. 643 (2010). "First, the evidence must be relevant to an issue other than the defendant's character," such as motive. *Id.* at 1107-08. "Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act." *Id.* at 1107. Third, the evidence must not be unduly prejudicial or otherwise contravene the requirements of Rule 403. *Id.* Prior-bad-acts evidence, "like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *Id.* at 1108.

Here, the second prong of the three-part test is not at issue. As to the first prong, the district court did not abuse its discretion in finding that Alwali's prior felony conviction and consequent status as a prohibited person were relevant to his alleged motive for assisting Cleveland in carrying out the straw purchase rather than purchasing the firearms himself. *See id.* at 1107-08. As to the third prong, the court ordered the parties to reach a stipulation in order to limit the prejudicial

13

nature of the evidence. The stipulation merely stated that Alwali previously had been convicted of an offense that was punishable by more than one year's imprisonment. No information about the prior offense was given to the jury. Alwali has not shown that the bare fact of his prior conviction was unduly prejudicial, confusing, or misleading. *See* Rule 403; *Phaknikone*, 605 F.3d at 1107. Accordingly, the district court did not abuse its discretion in admitting the evidence of Alwali's prior conviction. *See Jones*, 601 F.3d at 1261.

For the foregoing reasons, we affirm Alwali's convictions.

**AFFIRMED.**