[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15356
Non-Argument Calendar
_____

D.C. Docket No. 7:09-cr-00029-LSC-HGD-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RHONDA MICHELLE FEE,
a.k.a. Rhonda Michele Fee,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(October 4, 2012)

Before MARCUS, PRYOR and JORDAN, Circuit Judges.

PER CURIAM:

The main issue in this appeal is whether eight obscene photographs of a minor taken during a single photography session constitutes eight distinct crimes of producing child pornography. Rhonda Fee was convicted of eight counts of producing child pornography, 18 U.S.C. §§ 2, 2251(a), and one count of possessing child pornography, id. § 2252A(a)(5)(B), based on photographs that she and her husband took of Fee's 12-year-old daughter, K.S. Fee argues that the eight counts of producing child pornography in her indictment were multiplicitous. Fee also challenges the denial of her motion to sever her trial from the trial of her husband, Robert Fee; the decision to allow K.S. to testify by closed-circuit television; and the denial of her motion for a new trial. We conclude that the plain text of the statute that proscribes using a "minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," id. § 2251(a), makes each use of the minor to produce each obscene photograph a criminal offense. We also conclude that Rhonda Fee waived any objection to the refusal to sever her trial; no error occurred in allowing K.S. to testify by closed-circuit television; and the district court did not abuse its discretion in denying the motion for a new trial. We affirm.

## I. BACKGROUND

We divide in three parts our discussion of the background. First, we discuss

2

the investigation of the Fees and their superceding indictment.  Second, we discuss

Rhonda Fee's pre-trial proceedings.  Third, we discuss the evidence presented at

trial, the verdict, and Rhonda Fee's post-trial motions.

*A. The Investigation and Superceding Indictment*

K.S.'s brother reported to the Sheriff's Office in Tuscaloosa County that his

stepfather, Robert Fee, had been recording video footage of K.S.  Pam Kirsch, an

investigator in the child abuse and sex crimes division of the Sheriff's Office, then

interviewed K.S. at school.  Kirsch used the information elicited from K.S. to

obtain a warrant to search the Fees' home.

Officers searched the Fees' home on October 15, 2008, and discovered

evidence of the Fees' purient interest in K.S.  Investigator Kirsch observed that the

Fees had installed two surveillance cameras in K.S.'s bedroom and bathroom that

were focused on K.S.'s bed, toilet, and bathtub.  Both cameras downloaded images

to a television in the Fees' bedroom, and the television was connected to a

videocassette recorder.  Another officer discovered in the Fees' bedroom a filing

cabinet containing a stack of nine Polaroid photographs bound together with a

rubber band.  Eight of the photographs depicted different aspects of K.S.'s

genitalia, and the ninth photograph depicted Robert Fee in the nude.

A grand jury returned a superceding indictment that charged the Fees with

3

eight counts of producing child pornography and one count of possessing child pornography. 18 U.S.C. §§ 2, 2251(a), 2252A(a)(5)(B). The indictment charged that, on eight occasions between January 2003 and October 2008, the Fees used a minor to "engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" and that, on October 15, 2008, the Fees possessed those photographs. Each count of producing child pornography charged the Fees with producing a Polaroid photograph "known to the grand jury" as a numbered exhibit. The visual depictions in the exhibits differed. Exhibits 1 and 7 depicted the child's genitalia while she was wearing a partial body cast; Exhibits 2 and 6 depicted the child with her legs raised over her head and using her hands to expose her genitalia; Exhibit 3 depicted Rhonda Fee using her hands to expose the child's genitalia; Exhibit 4 showed the child lying naked on her back but focused primarily on her genitalia; Exhibit 5 depicted the child lying naked on her stomach as she "look[ed] back at the camera"; and Exhibit 8 showed another view of the child's genital area.

*B. Rhonda Fee's Motions for Dismissal and Severance and Her Opposition to K.S. Testifying by Closed-Circuit Television*

Rhonda Fee moved to join, or alternatively to dismiss some of, the eight counts of producing child pornography on the ground that the charges were

4

multiplicitous.  She argued that "a review of the content of the photographs . . .
[made] certainly possible that some or all of the photographs were taken at the
same time and place, but in any event on less than the eight separate occasions as
alleged by the superseding indictment."  She requested that the district court
"either dismiss the first Eight Counts of the indictment or in the alternative
consolidate the eight counts into one or more, but fewer than eight to reflect the
number of separate instances of conduct proven by the Government."  The district
court denied Rhonda Fee's motion.

When the United States moved to allow K.S. to testify by two-way closed-
circuit television, Rhonda Fee moved to sever her trial from that of her husband or,
alternatively, to require K.S. to testify in open court, but outside the presence of
Robert Fee.  Rhonda Fee argued that she was entitled to examine K.S. under the
Confrontation Clause of the Sixth Amendment.  The magistrate judge denied
Rhonda Fee's motion to sever, and she did not object to that ruling.

The district court held a hearing regarding the admission of K.S.'s testimony
by closed circuit television.  The United States presented testimony from Jane
Plaxco, a mental health counselor, that K.S. could not testify in the presence of the
Fees.  Plaxco testified that she treated K.S., who suffers from cerebral palsy and
walks with braces, using forensic sensitive counseling.  Plaxco testified that K.S.

5

was "very scared" of Robert Fee and feared being in the same room with him because "he made her do things that she didn't want to do."  Plaxco testified that K.S. was angry with Rhonda Fee, but hesitated "doing something that might hurt her mother because she loves her."  Plaxco also testified that, during a meeting in May 2009, she observed on K.S. "very deep, numerous sores on [one] forearm that had not been there . . . before" which "looked like they were infected"  and also a "very huge hangnail or raw cuticles that she was playing with and pushing back and picking at."  Plaxco questioned K.S. about the "gouges in her skin," and K.S. "said that she was scared to go to court" and was "scratching herself."  Ten days later, Plaxco observed sores on both of K.S.'s arms.  Plaxco opined that K.S. had repressed or had been unable to communicate her anxiety about the trial and had engaged in self-mutilation to express her feelings.  Plaxco stated she "[had] worked with children who were self-mutilators," but she "[did not] think [she had] ever worked with anybody that was as anxious about court as [K.S.] . . . or had the physical signs of being as anxious about court and testifying."  Although a tour of the courtroom addressed some of K.S.'s anxieties, merely "coming to the courtroom was very difficult for her," and she "kept wanting to know where [the Fees] would be sitting and if they would say anything to her."

Plaxco described K.S.'s anxiety as "severe" and "escalating."  A few days

6

before the hearing, K.S. heard Rhonda Fee's voice on the answering machine, and became angry, screamed, and "hit her grandmother." The next day, K.S. told Plaxco that she was "just really upset." Plaxco noticed that K.S. was "self-mutilating more," "[h]er verbal aggression was escalating," and she was "losing weight" and "not sleeping." Plaxco opined that requiring K.S. to testify in the presence of the Fees would "[a]bsolutely" inflict emotional trauma, and despite K.S.'s fear of video cameras, she would be less traumatized if permitted to testify by closed-circuit television.

In support of her request that K.S. testify in open court, Rhonda Fee presented testimony from Leah Belser, a forensic interviewer and therapist who had reviewed a videotaped interview with K.S. Belser testified that forensic sensitive training was "a type of therapy utilized by a lot of children's advocacy centers . . . in an attempt to preserve evidence." Belser also testified that there were several possible explanations for self-mutilation, including "[s]tress, anxiety . . . [and] displacement" from the home.

The district court granted the motion of the United States to allow K.S. to testify by closed-circuit television. The district court found that K.S. was "afraid" of Robert Fee and would suffer emotional trauma if required to testify in his presence. The district court also found that K.S. experienced a "different kind of

7

fear" with Rhonda Fee that was "so substantial that [it] outweigh[ed] the traditional requirement . . . [to] testify actually in front of the defendant."  Based on the evidence of K.S.'s self-mutilation and explanation for the mutilation, the district court was "convinced" that, if K.S. were forced to testify in the courtroom, she "[would] close up and [would] not say a word other than muttering" based on "fear for herself and emotional trauma that [she would] be experiencing from being in front of her mother and stepfather."  The district court stated that it would "make sure that every other mechanism of confrontation" was satisfied and would ensure that the jury viewed K.S.'s "entire demeanor . . . from the waist up"; saw K.S. "be placed under oath"; and observed "[a]nybody that's in [the room with K.S.] that might have an influence on [her] . . . [and] make sure no coaching or anything is done."

Rhonda Fee filed an untimely notice of intent to present expert testimony from Dr. Kimberly Ackerson, a clinical psychologist.  Rhonda Fee proffered that Ackerson would testify that Fee's "intellectual functioning fell within the 'borderline' to 'low average range'" and explain why she helped her husband photograph K.S.  Before opening statements, Rhonda Fee removed Ackerson from her witness list.

*C. Rhonda Fee's Trial and Post-Trial Motions*

8

At trial, the United States presented evidence that K.S. was used to produce child pornography.  K.S. testified by a closed-circuit television located in the chambers of the district court while the Fees communicated remotely with counsel in the chambers.  K.S. testified that she was 13 years old and identified Rhonda Fee as her mother and Robert Fee as her stepfather.  K.S. identified herself in the eight photographs and testified that her legs were spread open against her will by Rhonda Fee while Robert Fee took the photographs.  K.S. testified about Robert Fee viewing regularly the live camera feeds of K.S. in her bedroom and bathroom.  K.S. also testified that she had been touched "a lot" in her bedroom by Robert Fee and that "[i]t felt like a knife sometimes."  Investigator Kirsch testified about the views of K.S. depicted in the eight photographs.

In defense, the Fees testified that they photographed and videotaped K.S. to aid her in personal hygiene practices.  Robert Fee testified that he took eight photographs of K.S. during one photographic session; K.S. requested two photographs to see how she looked in a body cast applied after a surgery for her cerebral palsy; and he took six other photographs to show K.S. where to clean herself.  Rhonda Fee provided identical explanations for the photographs and testified that the Fees installed a video camera in the bathroom directed at the toilet and bathtub to "watch [K.S.] so she wouldn't fall and to make sure she was

9

bathing and getting herself clean" because she suffered from vaginal infections. On cross-examination, Rhonda Fee testified that K.S. was photographed in 2006 when she was ten years old. Rhonda Fee stated that she kept the photographs "in case K.S. had to be shown again" and she "didn't think about" asking Dr. Burgess for a diagram to use instead of the photographs.

The Fees also presented testimony from Dr. Karen Burgess, who had treated K.S. twice for vaginal infections. On the first occasion, Burgess observed that K.S. "had an appearance of nonspecific redness" and recommended careful vaginal cleaning. On the second occasion, K.S. complained of vomiting, diarrhea, and pain with urination. A nurse practitioner observed that K.S. had vaginal redness, recommended that K.S. continue using "proper cleaning techniques" with the assistance of a caretaker, and prescribed an anti-fungal medication. On cross-examination, Burgess testified that Robert Fee had reported that K.S. experienced genital pain when bathing and failed to cleanse thoroughly, but Burgess observed that K.S.'s genitalia were clean. Burgess also testified that she could have provided an anatomical drawing to review hygiene, and she had not recommended that the Fees photograph K.S.

During closing arguments, defense counsel urged the jury to find that the Fees "were trying to help their disabled daughter be healthy and independent" and

10

to consider Rhonda Fee's "limitations." Defense counsel argued that the Fees photographed K.S. to aid in hygiene practices and failed to contemplate using a different visual aid. Counsel also challenged K.S.'s credibility.

The jury found the Fees guilty of all nine charges, and Rhonda Fee moved for a judgment of acquittal on grounds that the evidence was insufficient to support the verdicts, K.S.'s testimony violated the Confrontation Clause, and the indictment was multiplicitous. Rhonda Fee also moved for a new trial on the same grounds. The district court denied Rhonda Fee's post-trial motions.

Rhonda Fee later moved to reconsider her motion for a new trial based on what she described as newly-discovered evidence that supported her theory of defense. Before sentencing, the district court ordered that Rhonda Fee undergo a psychological examination, and she argued that findings of the psychologist, had they been available at trial, would have caused the district court to change its rulings about severance and K.S.'s testimony by closed circuit television and affected the finding of the jury about Rhonda Fee's intent to exploit K.S. Rhonda Fee cited in her motion findings of the psychologist, Christine Agee, that Rhonda Fee had an intelligence quotient of borderline to low average; tended to be "overly passive, submissive and compliant in interpersonal relationships and . . . overly accepting of authority"; and acted "somewhat naive and gullible." Rhonda Fee

11

also cited Agee's  opinion that Rhonda Fee "would not have committed [the] offense on her own" and that her "dependent and introverted personality, combined with her limited cognitive functioning contributed to her decision to submit to her husband's judgment in this matter."

The district court denied Rhonda Fee's motion to reconsider.  The district court ruled that "nothing about the theory of defense [was] newly discovered and, because [Rhonda Fee] [was] arguing what she already argued at trial, [the] evidence] [was] cumulative."  The district court also ruled that Agee's testimony about Rhonda Fee's mental state would have been inadmissible at trial and would not have affected the ruling on her motion to sever.

The district court sentenced Rhonda Fee to the mandatory minimum sentence for her production crimes.  The district court ordered that Rhonda Fee serve eight concurrent terms of 180 months of imprisonment for producing child pornography to run concurrently with one term of 120 months for possessing child pornography.

## II. STANDARDS OF REVIEW

We review de novo whether charges in an indictment are multiplicitous. United States v. Jones, 601 F.3d 1247, 1258 (11th Cir. 2010).  Although the denial of a motion to sever is reviewed for an abuse of discretion, United States v. Tobin,

12

676 F.3d 1264, 1273 (11th Cir. 2012), a party must object to an order of a magistrate judge denying the motion to preserve the issue for appellate review, United States v. Schultz, 565 F.3d 1353, 1359 (11th Cir. 2009). We review de novo whether the admission of testimony by closed-circuit television violates the right of confrontation guaranteed under the Sixth Amendment. United States v. Yates, 438 F.3d 1307, 1311 (11th Cir. 2006) (en banc). "A motion for new trial based on newly discovered evidence is committed to the sound discretion of the trial court and will not be overturned absent abuse of discretion." United States v. Garcia, 13 F.3d 1464, 1472 (11th Cir. 1994).

## III. DISCUSSION

Rhonda Fee raises four issues for our consideration, none of which merit relief. First, we address Fee's argument that the charges in her indictment were multiplicitous. Second, we address briefly Fee's argument about her motion to sever. Third, we address Fee's challenge to the decision to allow K.S. to testify by closed-circuit television. Fourth, we address Fee's argument that she was entitled to a new trial based on newly-discovered evidence.

*A. Rhonda Fee's Indictment Was Not Multiplicitous.*

Rhonda Fee argues that her indictment was multiplicitous because her superseding indictment involved a single crime of producing child pornography.

13

Fee argues that section 2251(a) is aimed at proscribing the act of producing child pornography instead of proscribing the number of images produced. Fee's argument fails in the light of the plain text of section 2251(a).

To be multiplicitous, an indictment must charge a defendant with a single offense in multiple counts. Jones, 601 F.3d at 1258. A multiplicitous indictment violates the Double Jeopardy Clause of the Fifth Amendment because it gives a jury "more than one opportunity to convict the defendant for the same offense." Id. When an indictment contains more than one count charging a violation of the same statute, our inquiry concerns whether Congress intended the different acts underlying each count to constitute a separate offense. See United States v. Smith, 231 F.3d 800, 815 (11th Cir. 2000). "'[W]hether a continuous transaction results in the commission of but a single offense or separate offenses . . . is determined by whether separate and distinct prohibited acts, made punishable by law, have been committed.'" United States v. Davis, 730 F.2d 669, 672 (11th Cir. 1984) (quoting Bins v. United States, 331 F.2d 390, 393 (5th Cir. 1964)). The unit of prosecution is defined by the "essence," or key element, of the statute. Bins, 331 F.2d at 392.

Rhonda Fee's indictment is not multiplicitous. Fee was charged with using a "minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). The

14

statute defines the offense of using a minor in broad terms involving "any sexually explicit conduct" and "any visual depiction of such conduct." See United States v. Gonzales, 520 U.S. 1, 5, 117 S. Ct. 1032, 1035 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind.") (internal quotation marks omitted); Laperriere v. Vesta Ins. Group, Inc., 526 F.3d 715, 726 (11th Cir. 2008) ("[T]he term "any" in a statute has a "broad," "powerful," and "expansive" meaning; "it does not mean 'some' or 'all but a few,' but instead means 'all.'"); Price v. Time, Inc., 416 F.3d 1327, 1336 (11th Cir. 2005) (same as Laperriere). The text of section 2251(a) makes clear that Congress proscribed each discreet visual depiction of a minor as a separate offense. We agree with the Tenth Circuit that "[t]he fact that multiple photographs [of K.S.] may have been sequentially produced during a single photography session is irrelevant" because "[e]ach photograph depended upon a separate and distinct use of [K.S.]" United States v. Esch, 832 F.2d 531, 542 (10th Cir. 1987).

The indictment charged Rhonda Fee with eight separate acts of production of child pornography. Fee forced K.S. to engage in eight acts of sexually explicit conduct to produce separate visual depictions of that conduct. Fee manipulated K.S.'s body and directed K.S. to manipulate her body to produce separate images of specific aspects of K.S.'s genitalia.

15

Rhonda Fee argues that her interpretation of section 2251(a) is consistent with the reasoning of the Supreme Court in Bell v. United States, 349 U.S. 81, 75 S. Ct. 620 (1955), but we disagree. The Court in Bell applied the rule of lenity and held that the Mann Act, which proscribed the transportation in interstate commerce of a woman for prostitution, failed to evidence a congressional intent to treat simultaneous transportation of several women as separate offenses. 349 U.S. at 82–83, 75 S. Ct. at 622. We may invoke the rule of lenity only where a "reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." Moskal v. United States, 498 U.S. 103, 108, 111 S. Ct. 461 (1990) (internal quotation marks omitted); see United States v. Zuniga-Arteaga, 681 F.3d 1220, 1223 (11th Cir. 2012). But section 2251(a) is not ambiguous. Its plain text establishes that Congress intended to punish an offender for each use of a minor to produce an image depicting sexually explicit conduct.

### B. We Lack Jurisdiction to Consider Rhonda Fee's Argument about Severance.

Rhonda Fee argues that the magistrate judge erred by denying her motion to sever her trial from that of her husband, but we lack jurisdiction to review that argument. Rhonda Fee failed to object within 10 days to the ruling of the magistrate judge. She waived any objection to that ruling. Fed. R. Crim. P. 59(a).

16

*C. The District Court Did Not Violate Rhonda Fee's Right of Confrontation by Permitting K.S. to Testify By Closed-Circuit Television.*

Rhonda Fee argues that the district court violated her right of confrontation under the Sixth Amendment by allowing K.S. to testify by closed-circuit television. Fee argues that Plaxco's testimony did not support the finding by the district court that K.S. would suffer severe emotional trauma if forced to testify in the courtroom. Fee's argument fails.

Although the Confrontation Clause of the Sixth Amendment guarantees a defendant the right to confront in open court a witness against her, that right is not absolute. Maryland v. Craig, 497 U.S. 836, 849–50, 110 S. Ct. 3157, 3165–66 (1990); Yates, 438 F.3d at 1312. A face-to-face confrontation is not required where the "denial of such confrontation is necessary to further an important public policy" and "the reliability of the testimony is otherwise assured." Craig, 497 U.S. at 850, 110 S. Ct. at 3166. And the Supreme Court held in Craig that the "physical and psychological well-being of child abuse victims . . . [was] sufficiently important to outweigh . . . a defendant's right to face . . . her accusers in court" if eliciting testimony through a remote device would "protect [the] child witness from trauma . . . [that] would impair the child's ability to communicate." Id. at 853, 857, 110 S. Ct. at 3167, 3170.

17

The Child Victims' and Child Witness' Rights Act permits a minor to testify outside the courtroom by two-way closed-circuit television when the district court "finds that the child is unable to testify in open court in the presence of the defendant." 18 U.S.C. § 3509(b)(1)(B). A child witness may testify using the remote procedure under four circumstances, including if the child "is unable to testify because of fear" or there exists "a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying." Id. The findings of the district court under section 3509 must satisfy the test established in Craig. Yates, 438 F.3d at 1313. The district court must find that testifying by remote means is "necessary to protect the welfare of the particular child witness," Craig, 497 U.S. at 855, 110 S. Ct. at 3169; the "child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant," id. at 856, 110 S. Ct. at 3169; and the "emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify," id. (internal quotation marks omitted).

The district court did not err by allowing K.S. to testify against Rhonda Fee by closed-circuit television. The district court complied with the procedures outlined in and made the findings required under the Child Rights' Act. And the

18

United States established that K.S. would suffer trauma if forced to testify in Rhonda Fee's presence. Plaxco, who counseled K.S., testified that K.S. "said that she was scared to go to court," which she exhibited through engaging in self-mutilation; panicking at the sound of Rhonda Fee's voice; and obsessing about her proximity to Fee in the courtroom. Plaxco also testified that K.S.'s distress and anxiety exceeded that of any other child that Plaxco had counseled. Fee failed to present any evidence to cast doubt on Plaxco's qualifications or her counseling methodology; contradict Plaxco's recollections or observations; or undermine Plaxco's opinion that requiring K.S. to testify in Rhonda Fee's presence would "[a]bsolutely" inflict emotional trauma.

## D. The District Court Did Not Abuse its Discretion When It Denied Rhonda Fee's Motion for a New Trial.

Rhonda Fee was not entitled to a new trial based on Agee's psychological report. A new trial predicated on newly-discovered evidence is warranted only if the defendant discovers new evidence after trial that could not have been discovered earlier by exercising due diligence and the evidence is material, not cumulative of other evidence introduced, and would probably have produced a different result at trial. United States v. Thompson, 422 F.3d 1285, 1294 (11th Cir. 2005). Agee's findings about Rhonda Fee's acuity did not constitute new

19

evidence because Dr. Ackerson had communicated to Fee before trial that she had an intelligence quotient of "borderline to low average."  Agee's findings also were cumulative to evidence and arguments presented by Rhonda Fee to the jury.  Fee's defense focused on her lack of intent to produce child pornography, and defense counsel invited the jury to consider "limitations" that Fee exhibited during her testimony.  Fee could not have introduced testimony from Agee that Fee lacked the intent to produce child pornography and would not have committed the offense independently.  Fed. R. Evid. 704(b).  And we cannot conclude that the remainder of Agee's report would probably have changed the outcome of Fee's trial. Information in Agee's report that Fee had attended a junior college and obtained a professional degree in accounting would have contradicted Fee's argument that she lacked the intelligence to use means other than the photographs to educate K.S. about personal hygiene.  In addition, the United States introduced eight photographs that Fee produced depicting K.S. in a sexually explicit manner, and the jury apparently discredited Fee's testimony that she did not produce or retain the photographs for their sexual content.

## IV. CONCLUSION

We **AFFIRM** Rhonda Fee's convictions for producing and possessing child pornography.

20