17-2371-cr
*United States v. Valerio*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of March, two thousand nineteen.

PRESENT:

> ROBERT D. SACK,
> REENA RAGGI,
> SUSAN L. CARNEY,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                No. 17-2371-cr

JOSEPH VALERIO,

> *Defendant-Appellant.*

_____

FOR APPELLANT:                          LOUIS M. FREEMAN, Freeman, Nooter & Ginsberg, New York, NY.

FOR APPELLEE:                           ALLEN L. BODE (David C. James, Ameet B. Kabrawala, *on the brief*) Assistant U.S. Attorneys, for Richard P. Donoghue, United States Attorney, Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Bianco, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 1, 2017, is **AFFIRMED**.

Defendant-appellant Joseph Valerio appeals from a judgment sentencing him principally to 60 years' imprisonment on ten counts of conviction relating to the sexual exploitation of two minor children and the transportation, receipt, and possession of child pornography. Valerio challenges the denial of his motion to suppress inculpatory statements made during the execution of a search warrant at his home, raises procedural and substantive reasonableness challenges to his de facto life sentence, and contends that several of his convictions violate the constitutional prohibition against double jeopardy. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

**I.**

Valerio urges that the District Court erred in denying his motion to suppress statements made by him in response to questioning during the search of his home, executed pursuant to a valid warrant. On appeal from a suppression ruling, we review factual findings for clear error and questions of law *de novo. United States v. Faux*, 828 F.3d 130, 134 (2d Cir. 2016). The determination of whether Valerio was "in custody" during that questioning and therefore entitled to warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), is a question of law, and is thus subject to *de novo* review. *United States v. Newton,* 369 F.3d 659, 668 (2d Cir. 2004).

Consistent with the Fifth Amendment privilege against self-incrimination, statements made during a custodial interrogation are generally inadmissible unless a suspect has first been advised of his right to remain silent and to have counsel present. *Miranda*, 384 U.S. at 444. These warning requirements, however, apply only to "'custodial interrogation[s].'"

2

*Georgison v. Donelli*, 588 F.3d 145, 155 (2d Cir. 2009). To determine whether an individual was "in custody" when he was interrogated, we evaluate "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). This evaluation requires us to answer two questions. First, whether a Fourth Amendment seizure of the person occurred: that is, "whether a reasonable person would have thought he was free to leave the police encounter at issue." *Newton*, 369 F.3d at 672. If we conclude that a reasonable person would *not* have considered himself free to leave the encounter, we turn to the second question: "[whether] a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* In considering the latter question, we examine a range of circumstances, including: (1) "the interrogation's duration"; (2) "its location (*e.g.*, at the suspect's home, in public, in a police station, or at the border)"; (3) "whether the suspect volunteered for the interview"; (4) "whether the officers used restraints"; (5) "whether weapons were present and especially whether they were drawn"; and (6) "whether officers told the suspect he was free to leave or under suspicion." *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011). If, after weighing these factors, we conclude that a reasonable person in the defendant's situation would have considered his freedom curtailed to a degree associated with formal arrest, the defendant is then entitled to the whole range of protections recognized by *Miranda*.

At a suppression hearing conducted by the District Court, the Government relied on the testimony of a sole witness—FBI Special Agent Steven Troyd—to establish the relevant circumstances. Troyd testified that the search occurred at 6:00 am on a cold winter's day and was executed by him and a team of eleven other officers. Valerio allowed the officers entrance into his home without resistance. After the officers carried out a ten-minute protective sweep of the home, Troyd asked Valerio to sit at the dining room table to speak with him, and informed Valerio that they were searching for evidence of child pornography. During their dining room colloquy, Troyd was seated across the table from Valerio, and was accompanied at the table by two other officers, with a third officer standing in the corner of the room.

Troyd testified further that, during the interview, Valerio was not restrained or touched in any way. He was provided with a cup of water upon request. Troyd confronted Valerio with copies of incriminating emails that the Government had received in Ukraine from Valerio's co-conspirator, Olena Kalichenko. In response, Valerio admitted that he directed Kalichenko to produce child pornography and that he had received it by email.

At this point, Troyd said he conferred with another officer and decided to call the U.S. Attorney's Office for authorization of a criminal complaint against Valerio. After the complaint was authorized, Troyd advised Valerio of his *Miranda* rights. Valerio then made several additional admissions but requested to speak to his attorney when the agents asked him to sign a written statement. At that point, all further questioning ceased. The interview had lasted approximately 90 minutes when Troyd administered the *Miranda* warning.

We discern no error in the District Court's determination that Valerio was not "in custody" at the time of the interview and in its denial of Valerio's motion to suppress. Valerio argues that a reasonable person would not have felt free to leave under the conditions presented here, where a dozen officers in all were executing a search warrant in his home and his freedom of movement within the home was limited. After all, "'[i]f a reasonable person is interrogated inside his own home and is told he is "free to leave," where will he go? The library? The police station?'" *Faux*, 828 F.3d at 137 (quoting *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008)). Under our precedent, however, Valerio's argument fails because he cannot show that the restrictions the agents placed upon him curtailed his freedom of action to the degree associated with a formal arrest.

In this case, the District Court found that: (1) Valerio was asked, not directed, to sit for an interview in the dining room; (2) he was not ordered to remain in the dining room or to answer any questions, nor was he threatened during the interview; (3) he was never told that he was not free to leave or would be arrested after the interview; (4) he was never handcuffed or restrained at any time; and (5) he was cooperative with the agents and remained calm throughout the interview. Furthermore, the District Court found that the agents did not brandish or draw their weapons at any time while executing the search warrant or interviewing Valerio. We have repeatedly found that, under such circumstances, a

4

suspect is not "in custody" and therefore is not entitled to *Miranda* warnings. *See, e.g., United States v. Familetti*, 878 F.3d 53, 60–61 (2d Cir. 2017) (defendant not in custody when interrogated in bedroom, even when he was initially restrained during a panic attack); *Faux*, 828 F.3d at 138–39 (despite presence of over a dozen agents, defendant not in custody when "questioned in the familiar surroundings of her home . . . seated at her own dining room table" and agents did not display weapons or threaten any use of force).

Accordingly, because Valerio was not "in custody" for purposes of *Miranda* when he was interviewed by Troyd, we affirm the District Court's denial of his motion to suppress.[1]

## II.

Valerio raises various procedural and substantive challenges to his 60-year prison sentence. As to his procedural challenges, Valerio argues (1) that, in imposing this sentence, the District Court impermissibly relied on uncharged conduct alleged by the Government after trial and (2) that it specifically erred by *sua sponte* inviting Valerio's co-conspirator Kalichenko to testify at an evidentiary hearing held pursuant to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979). He also contends (3) that the District Court used an erroneous benchmark in calculating the sentence.

We reject these challenges. First, "a sentence is procedurally unreasonable if the district court . . . selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Jesurum*, 819 F.3d 667, 670 (2d Cir. 2016) (internal quotation marks and emphasis omitted). Federal statutory sentencing law provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Accordingly, a district court may consider "uncharged conduct proven by a preponderance of the evidence," as long as this consideration "does not increase either the statutory minimum or maximum available punishment." *United States v. Ulbricht*, 858 F.3d 71,

---

[1] In light of this conclusion, Valerio's corollary argument regarding a deliberate two-step interrogation necessarily fails as well. *See Familetti*, 878 F.3d at 62.

128 (2d Cir. 2017). The testimony adduced by the government at the *Fatico* hearing—which concerned a pattern of deceptive and violent conduct towards adult women, including violent rapes—was plainly relevant to the District Court's evaluation of Valerio's "background, character, and conduct," and its balancing of the sentencing factors identified in 18 U.S.C. § 3553(a). Valerio does not contend that any of the District Court's factual findings following the *Fatico* hearing was erroneous, much less clearly erroneous. Accordingly, we discern no procedural error in the District Court's consideration of uncharged conduct.

A sentence may also be procedurally unreasonable if the district court "fails to calculate (or improperly calculates) the Sentencing Guidelines range." *Jesurum*, 819 F.3d at 670. Valerio's contention that the District Court used the wrong Sentencing Guideline as a benchmark, however, is frivolous. Valerio was convicted on ten counts yielding a total Guidelines range of 260 years.[2] Although he now invokes U.S.S.G. § 5G1.2(c), which establishes the procedure for determining the specific sentence to be imposed on each count in a multiple-count case, the provision applies only when "the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment." Because the District Court determined, after properly balancing the § 3553(a) factors, that the total punishment to be imposed on Valerio (*i.e.*, 60 years) exceeded the 30-year statutory maximum on any available count of conviction, it did not err in ordering that Valerio's sentences run consecutively on certain counts, as necessary to achieve the total punishment. *See* U.S.S.G. § 5G1.2(d).

Valerio urges that his 60-year sentence is substantively unreasonable. Under the "parsimony clause" in 18 U.S.C. § 3553(a), a district court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes set forth in that

---

[2] Without objection, the District Court calculated Valerio's offense level as 47 and his criminal history category as I, which yields a presumptive Guidelines sentence of life in prison. Pursuant to U.S.S.G. § 5G1.1(a), the District Court adjusted Valerio's Guidelines to 260 years by stacking the statutory maximums for each of the ten counts of conviction. *See United States v. Brown*, 843 F.3d 74, 82 (2d Cir. 2016) (describing stacking procedure); *United States v. Chase*, 695 F App'x 601, 604 (2d Cir. 2017) (same). The court then granted Valerio a variance by imposing a sentence of 60 years.

statute. Where, as here, a district court has properly calculated the Guidelines range and committed no procedural error, we will "not substitute our own judgment for the district court's" and will set aside its substantive determination "only in exceptional cases where [its] decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). We defer heavily to a district court's sentencing decisions because of its "unique factfinding position, which allows it to hear evidence, make credibility determinations, and interact directly with the defendant . . . thereby gaining insights not always conveyed by a cold record." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012).

Valerio contends principally that the District Court here, in issuing a de facto life sentence, overestimated his likely dangerousness and risk of recidivism and failed adequately to consider his potential for rehabilitation. The District Court considered such a sentence warranted in light of the aggravated nature of the conduct testified to at trial and at the *Fatico* hearing. The court found that this conduct demonstrated that Valerio was a "clear and compelling danger to the community[,] especially to children." Gov't App'x 91. The District Court stated in particular that Valerio's "extreme dangerousness was further corroborated at the *Fatico* hearing," where several women testified credibly to behavior including violent rape, death threats, and assault. *Id.* at 92–93. Considering the totality of Valerio's background and characteristics, the court concluded that it needed to "protect society from [him] for the rest of his life," since the evidence refuted that "there are any limits on what he would do to satisfy his sexual desires to women or to children," and that "his level of dangerousness will diminish over time." *Id.* at 93–94. In reaching these conclusions, the District Court expressly considered the arguments raised by Valerio in mitigation, including Valerio's own stated history as a victim of childhood sexual abuse. It also reasonably examined Dr. Barday's assessment of Valerio as posing only a "moderate" risk of recidivism, and found that it failed to take into account the violence against women testified to at the *Fatico* hearing. *Id.* at 94–96.

A 60-year sentence is indisputably severe, especially where it is, as a practical matter, a life sentence. The record in this case amply supported the District Court's discretionary determination, however, that Valerio's pattern of violent sexual exploitation of women and children rendered him a danger to society, and that the danger he poses would be mitigated only by life incarceration. The District Court's sentence is therefore "within the range of permissible decisions," *Cavera*, 550 F.3d at 189, and we reject Valerio's contention that it is substantively unreasonable.

## III.

Finally, Valerio argues on appeal that certain of his counts of conviction violate the Fifth Amendment's Double Jeopardy Clause, which prohibits multiple punishments for the same criminal conduct unless Congress so intended. Where Congressional intent is not clear from the face of the statute and applicable legislative history, we apply the test derived from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), to determine whether the Double Jeopardy Clause is contravened. *See United States v. Khalil*, 214 F.3d 111, 118 (2d Cir. 2000) ("[I]f each section requires proof of at least one fact that the other does not, there are two offenses, and it is presumed that the legislature intended to authorize prosecution and punishment under both."). Lesser included offenses and their greater offenses are considered a single offense and may not be punished separately. *Rutledge v. United States*, 517 U.S. 292, 297 (1996).

Valerio failed to preserve his double jeopardy arguments before the District Court; they are, therefore, forfeited unless he can demonstrate plain error,[3] *i.e.*, "(1) there was error,

---

[3] The government argues that Valerio waived his double jeopardy arguments. We have stated that "the constitutional protection against double jeopardy is a personal right and, like other constitutional rights, can be waived if it is not timely interposed at trial." *Aparicio v. Artuz*, 269 F.3d 78, 96 (2d Cir. 2001). We have also, however, applied plain error review to double jeopardy claims. *See, e.g., United States v. Polouizzi*, 564 F.3d 142, 154 (2d Cir. 2009); *United States v. Irving*, 554 F.3d 64, 78 (2d Cir. 2009); *United States v. Gore*, 154 F.3d 34, 41–42 (2d Cir. 1998). We do not perceive our case law's reference to waiver—rather than forfeiture—as limiting our discretion to correct plain error on a double jeopardy claim in appropriate cases, even if the argument was not made in the district court. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right."(internal quotation marks omitted)); *United States v. Dantzler*, 771 F.3d 137, 146 n.5 (2d Cir. 2014) ("[C]ourts applying waiver doctrine have focused on strategic, deliberate decisions that litigants consciously make.").

(2) the error was plain, . . . (3) the error prejudicially affected [the defendant's] substantial rights, [and (4)] the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006) (alterations and internal quotation marks omitted). The defendant bears the burden of showing plain error. *United States v. Boyland*, 862 F.3d 279, 289 (2d Cir. 2017).

Valerio first argues that his conviction for sexual exploitation of Jane Doe #1 in violation of both 18 U.S.C. § 2251(a) (Count Two) and 18 U.S.C. § 2251(c) (Count Three) impermissibly imposes dual punishment for the same acts.[4] We have not previously determined whether Congress intended, by enacting section 2251(c), to create a separate offense that could also apply to individuals convicted under section 2251(a), or whether it intended only to empower federal courts to apply the statute to extraterritorial conduct. When an objection is forfeited before the district court, however, an error is "plain" only when the ruling below was "contrary to law that was clearly established by the time of the appeal." *Irving*, 554 F.3d at 78; *see also United States v. Weintraub*, 273 F.3d 139, 152 (2d Cir. 2001) ("A reviewing court typically will not find such error where the operative legal question is unsettled."). Accordingly, because this issue is unsettled, we cannot conclude that the District Court committed plain error in permitting Valerio to be convicted under both sections 2251(a) and 2251(c).

Valerio contends next that his conviction for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Fifteen) violates the Fifth Amendment because it is a lesser-included offense of his conviction for receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) (Count Five). This argument fails. We have repeatedly declined to

---

[4] Section 2251(a) criminalizes the sexual exploitation of minors for the purpose of producing a visual depiction of such conduct where: (1) the defendant knows or has reason to know that the visual depictions produced therefrom will be transported or transmitted using any means or facility or in or affecting interstate or foreign commerce; (2) the visual depictions were produced or transmitted using materials that have been transported in or affecting interstate or foreign commerce; or (3) such visual depictions are actually transmitted using any means or facility or in or affecting interstate or foreign commerce.

Section 2251(c) criminalizes the sexual exploitation of minors *outside* the United States where the defendant intends that visual depictions of the exploitation be transported, or actually transports such depictions to the United States.

9

find plain error when the factual record demonstrates that the jury could have based its possession and receipt convictions on separate images. *See Irving*, 554 F.3d at 78–79; *Polouizzi*, 564 F.3d at 158–59. In this case, the factual record supports a jury finding that Valerio received illicit videos of Jane Doe #1 from Kalichenko through a means or facility of interstate or foreign commerce, satisfying the receipt charge, § 2252(a)(2), and that Valerio possessed images of Jane Doe #2 that were produced in his basement but never "received" from anyone, satisfying the possession charge, § 2252(a)(4). Because Valerio did not object to the verdict or request express jury findings that the receipt and possession convictions be based on different images or videos, we identify no plain double jeopardy error as to these counts.

Last, Valerio challenges his three convictions on Counts Six, Seven, and Eight for attempted sexual exploitation of Jane Doe #1 in violation of 18 U.S.C. § 2251(e). He contends that these attempts—through three e-mailed proposals, one per count—should have merged into the completed substantive offenses of sexual exploitation of a child charged in Counts Two or Three as a series of "substantial steps" towards the later-completed substantive offenses. *See United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011) (conviction for attempt requires proof that the defendant "(a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission"). On Valerio's earlier motion, the District Court adopted this line of reasoning and dismissed Counts Nine through Thirteen, all of which charged attempted sexual exploitation on dates occurring in the seven-month period between April 1, 2012, and November 1, 2012, the period of sexual exploitation alleged in Counts Two and Three. Valerio did not seek dismissal of Counts Six, Seven, and Eight, however, which concerned conduct alleged to have occurred outside the seven-month period, respectively on January 23, 2012, January 24, 2012, and March 18, 2012.

On plain error review, Valerio's challenge fails. The evidence adduced at trial showed that Valerio directed Kalichenko to produce numerous illicit videos of her young daughter over many months, extending longer than the seven-month period charged in Counts Two and Three. Valerio does not contend that the government could not have prosecuted him

10

separately for each such direction or for each instance of sexual exploitation, measured (for example) by an image taken or video made at Valerio's direction. Indeed, in multiple-count child pornography cases such as this, what units of prosecution may be pursued in parallel without raising Double Jeopardy concerns presents a question of law that is unsettled in our Court, although other Circuits have addressed it and have concluded that each use of a minor to create a single image is enough to support a single count of conviction. *See, e.g.*, *United States v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987) ("As we construe the statute, each use of a minor to create a visual depiction constitutes a separate and distinct violation, and thus represents the correct unit of prosecution."); *United States v. Fee*, 491 F. App'x 151, 157 (11th Cir. 2012) (summary order) ("The text of section 2251(a) makes clear that Congress proscribed each [discrete] visual depiction of a minor as a separate offense.") If under our existing law Valerio could have been convicted of a single count of violating section 2251(a) based on each time that he facilitated the sexual exploitation of Jane Doe #1 outside the seven-month period alleged in Counts Two and Three, then he could be convicted of separate attempts to do so during that period, too, notwithstanding the grouping of some of those later efforts as predicates for prosecution in Counts Two and Three. Accordingly, we cannot conclude that the District Court committed plain error by allowing Valerio's conviction on Counts Six through Eight to stand.

* * *

We have considered Valerio's remaining arguments and conclude that they are without merit. For the foregoing reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11