[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12022
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-00499-RWS-CCH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

J. L. MENEFEE, II,
a.k.a. J. L. Menefee,
a.k.a. JL Menefee,
a.k.a. JL Menefee, II,
a.k.a. James L. Menefee,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 3, 2016)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

J. L. Menefee, II stands convicted of uttering false statements in violation of 18 U.S.C. § 1001 when he made fraudulent statements in a loan application for a $1.8 million loan from the victim, Branch Bank & Trust Company (BB&T). He appeals the district court's order crediting against his $1.8 million restitution judgment a total of $1.375 million for collateral property received by the victim; crediting against the judgment $75,000 plus $1,953.74 in interest for a Certificate of Deposit (CD) seized by the victim; denying his requested credit of $200,000 for a cash injection made at the loan closing; and directing garnishee, SunTrust Bank (SunTrust), to turn over all of his property, including the contents of his companies' accounts.

On appeal, Menefee first argues that the district court erred in applying the credits to his restitution judgment. He should have been credited $1.6 million for the collateral property received by the victim and $200,000 for a cash injection he made at closing. In addition, the interest calculated on the CD was incorrect. Second, the government violated his *Brady*[1] rights, as it had access to two appraisals of the collateral property at sentencing but did not disclose them. Third, the district court incorrectly upheld a garnishment, despite an insufficient showing that his companies' accounts were used for personal expenses.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

## I.    Restitution Credit

"We review the legality of a restitution order de novo and the factual findings underlying the order for clear error."  *United States v. Cavallo*, 790 F.3d 1202, 1238 (11th Cir. 2015).  The Mandatory Victims Restitution Act (MVRA) states that if the property at issue cannot be returned to the owner, then the defendant should pay the value of the property minus "the value . . . of any part of the property that is returned."  18 U.S.C. § 3663A(b)(1)(B).  The restitution award must be based on the loss the victim actually suffers, so the court must deduct as an offset any value the victim might have derived.  *Cavallo*, 790 F.3d at 1239.

Menefee argues that the district court erred in crediting the restitution amount because it (i) improperly valued the subject property, (ii) failed to give credit for a $200,000 cash injection paid at closing, and (iii) improperly calculated interest on a CD.  We address each argument in turn.

First, Menefee argues that the district court improperly valued the foreclosed property and that the offset should be based on the highest appraisal, $1.6 million.  In *Robers v. United States*, Robers, who also submitted fraudulent loan applications, argued that because the banks sold the collateral properties in a falling real estate market, they were worth more when the banks took title and restitution should be credited with this higher value.  572 U.S. ___, ___, 134 S. Ct. 1854, 1857 (2014).  The Supreme Court found that "property . . . returned" under

the MVRA referred to the money that the banks lent to Robers and subsequently lost, not the collateral property the banks received in foreclosure. *Id.* (internal quotation marks omitted). Therefore, the Court held that "a sentencing court must reduce the restitution amount by the amount of money the victim received in selling the collateral, not the value of the collateral when the victim received it." *Id.* at 1856.

The Supreme Court also acknowledged that the statute has a proximate cause requirement, which turns on "whether the harm alleged ha[d] a sufficiently close connection to the conduct at issue." *Id.* at 1859 (internal quotation marks omitted). Menefee, like Robers, argues that the delay in the sale of the property caused a lower sale price and broke the causal connection necessary for proximate cause. However, the Supreme Court held in *Robers* that fluctuation in property values is common and its existence is foreseeable. *See id.* at 1859. Therefore, the fact that property values were lower when BB&T sold the property did not break the causal connection, and Menefee failed to point to any compelling facts in the record that would definitively break the causal connection required for proximate cause.

In light of the above, it was not clearly erroneous for the district court to find that Menefee was entitled to a credit of $1.375 million for the collateral received by the victim, an equitable sum considering the property only sold for $550,000.

Second, the district court did not clearly err in denying Menefee's request that the $200,000 cash injection qualify as an offset. By Menefee's own admission, this sum did not constitute a direct payment to the loan principal. Rather, it served as a prerequisite payment for closing costs that did not reduce the actual amount of the loan and therefore should not be credited towards any restitution amount owed on the loan principal.

Finally, while the district court did not clearly articulate its $1,953.75 interest calculation on the $75,000 CD seized by BB&T, Menefee has failed to meet his burden of proving this was clear error. *See United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998) ("Logically, the burden of proving an offset should lie with the defendant.").[2]

## II.    *Brady* Violation

We review de novo an alleged *Brady* violation. *United States v. Jones*, 601 F.3d 1247, 1266 (11th Cir. 2010). Menefee argues that the government's failure to disclose two prior appraisals of the subject property at sentencing constitutes a due process violation pursuant to *Brady*. *See* 373 U.S. at 87.

Under *Brady*, "the defendant must prove that (1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and

---

[2] Because the CD originated at BB&T, Menefee's argument rests on the assumption that BB&T would continue to pay out interest on the CD to itself after seizure from Menefee. Not only is this a questionable assumption, but Menefee has failed to cite any law in support.

could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material." *LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1268 (11th Cir. 2005).  Therefore, if a defendant "had within [his] knowledge the information by which [he] could have ascertained the alleged *Brady* material, there is no suppression by the government." *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1315 (11th Cir. 2005) (internal quotation marks omitted).  The materiality requirement is "satisfied if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 746 (11th Cir. 2010) (internal quotation marks omitted).

Here, Menefee did not prove a violation of his *Brady* rights, as he could have obtained the $1.6 million appraisal with reasonable diligence prior to sentencing.  That appraisal was appended to a motion BB&T filed in the bankruptcy proceedings for Menefee's company, a motion which Menefee references in his brief to this court.  *See LeCroy*, 421 F.3d at 1268 (finding no *Brady* violation where defendant's counsel could have obtained the relevant evidence by exercising "reasonable diligence").

Moreover, while Menefee may not have received the $1.375 million appraisal, missing such evidence would not be material here.  Since the court

accorded that precise amount in restitution offset for the collateral property, there would be no change to the ultimate result. *See Allen*, 611 F.3d at 746.

### III.    Garnishment

Under 28 U.S.C. § 3205(a), "[a] court may issue a writ of garnishment against property . . . in which the debtor has a substantial nonexempt interest." After the garnishee files an answer, the judgment debtor can object, stating the grounds for the objection while carrying the burden of proving such grounds. 28 U.S.C. § 3205(c)(5).

Menefee has failed to carry his burden of proving the grounds of his objection to the answer filed by the garnishee, SunTrust. Specifically, Menefee had the burden of proving that his accounts were subject to a statutory exemption, and he has failed to make any such arguments both at the district court and on appeal. *See id.* At a hearing regarding restitution (during which garnishment issues were formally addressed) and in his post-hearing brief, Menefee failed to articulate and prove why his accounts were exempt from garnishment. Therefore, there was no statutory rationale for an additional hearing and the district court did not err in holding the accounts subject to garnishment.[3]

---

[3] Menefee also claims that the government seized money from his minor child's account, but points to nothing in the record for support, and the court's order does not appear to address any such account.

## IV.    Conclusion

We find no error as to the district court's findings that (i) restitution would be offset by $1.375 million for the subject property but not the $200,000 cash injection; (ii) the CD interest credited as an offset amounts to $1,953.75; (iii) the government did not commit a *Brady* violation with respect to the two property appraisals; and (iii) garnishment of Menefee's SunTrust accounts were proper. Thus, we affirm.

**AFFIRMED.**